Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
Erica L. Reilley (State Bar No. 211615)
elreilley@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone:     +1.949.851.3939
Facsimile:     +1.949.553.7539

Attorneys for Defendants
HONORABLE DIANA BECTON, Presiding Judge of
the Superior Court of California, County of Contra
Costa, and KIRI TORRE, Chief Executive Officer of
the Superior Court of California, County of Contra
Costa

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JASON ROBERTSON,<br><br>              Plaintiff,<br><br>      v.<br><br>DIANA BECTON, IN HER OFFICIAL CAPACITY AS PRESIDING JUDGE OF THE SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF CONTRA COSTA, and KIRI TORRE, IN HER OFFICIAL CAPACITY AS THE EXECUTIVE OFFICER OF THE SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF CONTRA COSTA,<br><br>              Defendants. | Case No. CV 12-05389 PJH<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>Date:          February 6, 2013<br>Time:          9:00 a.m.<br>Courtroom:          3 |

1

**TABLE OF CONTENTS**

2

Page

3

INTRODUCTION ................................................................................................... 1

4

STATEMENT OF FACTS ....................................................................................... 3

5

    A.   Robertson Seeks An Injunction Granting Him Unlimited Access to Traffic
Citations Containing Drivers' Sensitive Personal Information ....................... 3

6

    B.   The Superior Court Processes The Sensitive Personal Information Of
Approximately 10,000 Cited Drivers Each Month, And Then Stores The Hard-
Copy Citations Off Site................................................................................... 4

7

8

    C.   The Superior Court Provides Reasonable Access To Court Records ............... 5

9

    D.   The Superior Court Has Not Denied Robertson's Request ............................ 6

10

    E.   When Robertson Did Not Immediately Receive Access, He Filed Suit........... 7

ARGUMENT ........................................................................................................... 8

11

I.     ROBERTSON'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE
DENIED—AND THIS CASE SHOULD BE DISMISSED—BECAUSE
ROBERTSON DOES NOT HAVE A JUSTICIABLE CASE ............................... 8

12

13

II.    ROBERTSON FAILS TO SATISFY THE FOUR FACTORS THAT MIGHT
OTHERWISE JUSTIFY THE "DISFAVORED" INJUNCTION HE SEEKS.................. 10

14

15

    A.   Robertson's Requested Mandatory Injunction Is "Disfavored" And Subject To
Even Stricter Scrutiny .................................................................................. 11

16

    B.   Robertson Cannot Succeed On The Merits................................................... 12

17

         1.   The First Amendment Does Not Guarantee Robertson Access To The
Sensitive Information Contained In Traffic Citations ............................. 12

18

19

         2.   Federal Common Law Does Not Guarantee Robertson Access to The
Sensitive Information Contained In Traffic Citations ............................. 16

20

         3.   California State Law Does Not Guarantee Robertson Access to The
Sensitive Information Contained In Traffic Citations, Either ................. 17

21

    C.   Robertson Cannot Demonstrate A "Real and Concrete" Harm, Much Less
Irreparable Harm.......................................................................................... 18

22

    D.   Robertson Cannot Show The Balance Of Equities Tips In His Favor........................ 19

23

    E.   Robertson's Requested Injunction Will Not Serve The Public Interest ...................... 20

24

III.   UNDER ANY CIRCUMSTANCE, A BOND IS REQUIRED........................................ 21

25

IV.   OBJECTIONS TO AND MOTION TO STRIKE ROBERTSON DECLARATION ......... 21

26

CONCLUSION ..................................................................................................... 23

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- i -

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**CASES**

4

*American-Arab Anti-Discrimination Comm. v. Reno*,
  70 F.3d 1045 (9th Cir. 1995).................................................................................. 9

5

*Associated Press v. United States Dist. Court*,
6  705 F.2d 1143 (9th Cir. 1983) ............................................................................. 19

7

*Brown & Williamson Tobacco Corp. v. FTC*,
  710 F.2d 1165 (6th Cir. 1983).............................................................................. 16

8

*Chandler v. State Farm Mut. Auto Ins. Co.*,
9  598 F.3d 1115 (9th Cir. 2010)................................................................................ 8

10

*Dahl v. HEM Pharms. Corp.*,
11  7 F.3d 1399 (9th Cir. 1993) ................................................................................. 11

12

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
  448 F.3d 1118 (9th Cir. 2006).............................................................................. 12
13

14

*Detroit Free Press v. Ashcroft*,
  303 F.3d 681 (6th Cir. 2002)................................................................................ 15

15

*Earth Island Institute v. Carlton*,
16  626 F.3d 462 (9th Cir. 2010)................................................................................ 19

17

*Elrod v. Burns*,
  427 U.S. 347 (1976)........................................................................................... 9, 18
18

19

*FTC v. Standard Financial Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ................................................................................ 16

20

*Globe Newspapers Co. v. Superior Court*,
21  457 U.S. 596 (1982).............................................................................................. 9

22

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004).................................................................................... 13
23

24

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999)................................................................................ 21

25

*Houchins v. KQED, Inc.*,
26  438 U.S. 1 (1978).................................................................................................. 9

27

*In re Copy Press, Inc.*,
  518 F.3d 1022 (9th Cir. 2008).............................................................................. 13

28

*In re Newark Morning Ledger Co.*,
   260 F.3d 217 (3d Cir. 2001)..................................................................9

*In re Providence Journal Co.*,
   293 F.3d 1 (1st Cir. 2002)...................................................................16

*In re Reporters Comm. for Freedom of the Press*,
   773 F.2d 1325 (D.C. Cir. 1985).............................................14, 15, 16

*In re Search Warrant for Secretarial Area Outside*,
   855 F.2d 569 (8th Cir. 1988)..............................................................13

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003)..............................................................21

*Leigh v. Salazar*,
   677 F.3d 892 (9th Cir. 2012)..............................................................13

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980)............................................................18

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006)...............................................................16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009)..............................................................11

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)..........................................................................10

*Mercury Interactive Corp. v. Klein*,
   158 Cal. App. 4th 60 (2007)..............................................................17

*N. Jersey Media Group, Inc. v. Ashcroft*,
   308 F.3d 198 (3d Cir. 2002)...............................................................15

*Nixon v. Warner Commc'ns*,
   435 U.S. 589 (1978)............................................................................5

*Pansy v. Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994)...................................................................8

*Paradise Hills Assocs. v. Procel*,
   235 Cal. App. 3d 1528 (1991).............................................................18

*Pharma. Soc'y of State of N.Y. v. N. Y. State Dep't of Soc. Servs.*,
   50 F.3d 1168 (2d Cir. 1995)...............................................................21

*Press-Enterprise Co. v. Superior Court*,
   478 U.S. 1 (1986)........................................................................13, 14

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- iii -

*Reno v. Condon*,
  528 U.S. 141 (2000) ........................................................................................ 15

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ........................................................................................ 14

*Roda Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ....................................................................... 21

*San Diego Police Officers Ass'n v. City of San Diego*,
  29 Cal. App. 4th 1736 (1994) .......................................................................... 17

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*,
  997 F.2d 484 (8th Cir. 1993) ........................................................................... 12

*Scherr v. Volpe*,
  466 F.2d 1027 (7th Cir. 1972) ......................................................................... 21

*Senne v. Village of Palatine*,
  2012 WL 3156335 (7th Cir. Aug. 6, 2012) (en banc) ..................................... 20

*Stanley v. Univ. of Southern California*,
  13 F.3d 1313 (9th Cir. 1994) ........................................................................... 11

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
  316 F.2d 804 (9th Cir. 1963) ........................................................................... 12

*Times Publishing Co. v. United States Dist. Court*,
  510 U.S. 907 (1993) .......................................................................................... 9

*United States v. Bus. of the Custer Battlefield Museum & Store*,
  658 F.3d 1188 (9th Cir. 2011) ......................................................................... 13

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997) ......................................................................... 16

*United States v. Gonzales*,
  150 F.3d 1246 (10th Cir. 1998) ....................................................................... 13

*United States v. Rajaratnam*,
  708 F. Supp. 2d 371 (S.D.N.Y. 2010) ............................................................. 10

*Va. Dep't of State Police v. Wash. Post*,
  386 F.3d 567 (4th Cir. 2004) ........................................................................... 13

*Wilk v. Am. Med. Ass'n*,
  635 F.2d 1295 (7th Cir. 1980) ......................................................................... 17

*Winter v. Nat'l Res. Def. Council*,
  555 U.S. 7 (2008) ............................................................................. 10, 19, 20

Defs.' Opp. to Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- iv -

1

STATUTES

2

18 U.S.C. §§ 2721 *et seq.* ................................................................................ 15, 20

3

18 U.S.C. § 2725(3) ............................................................................................. 15

4

Cal. Gov't Code § 68150(*l*) ........................................................................ 5, 6, 17

5

Cal. Gov't Code § 70627 ....................................................................................... 6

6

Cal. Pen. Code § 853.9(b) .................................................................................... 17

7

Cal. Veh. Code § 40513(a) ................................................................................... 17

8

OTHER AUTHORITIES

9

140 Cong. Rec. H2518 ......................................................................................... 20

10

Cal. Const., Article I, § 3 ..................................................................................... 17

11

Cal. R. Ct. 2.500 ............................................................................................. 6, 17

12

Cal. R. Ct. 2.503 .................................................................................................. 17

13

Cal. R. Ct. 2.550(c) ............................................................................................... 6

14

Fed. R. Civ. P. 5.2 ............................................................................................... 15

15

Fed. R. Civ. P. 65(c) ............................................................................................ 20

16

Fed. R. Crim. P. 49.1 ........................................................................................... 15

17

Fed. R. Evid. 602 ........................................................................................... 21, 22

18

Fed. R. Evid. 802 ........................................................................................... 21, 22

19

NDCA Civil Local Rule 7-5(b) ........................................................................... 22

20

William E. Wegner et al., California Practice Guide: Civil Trials and Evidence ¶ 15:51
    (The Rutter Group 2012) .............................................................................. 17

21

22

23

24

25

26

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- v -

1

## INTRODUCTION

2

Plaintiff Jason Robertson seeks a *mandatory* injunction against the Honorable Diana

3 Becton, Presiding Judge of the Superior Court of California, County of Contra Costa, and Kiri

4 Torre, Executive Officer of the Superior Court of California, County of Contra Costa

5 (collectively, the "Superior Court"), ordering them to provide public access to traffic citations that

6 contain substantial sensitive personal information, including the cited driver's physically

7 descriptive information (e.g., height, weight, hair and eye color), driver's license number, home

8 address, and date of birth.

9

Indeed, it is precisely because of the personal information reflected in these forms that the

10 Superior Court notified Robertson on October 5, 2012, that it was "reviewing [his] information

11 request" as it appeared to seek sensitive information that could not be disclosed as a matter of

12 federal law:

13

14

15

16

17

18

> I write to you as the Chief Executive Officer for the Contra Costa Superior Court (the Court) in response to your request to physically inspect bulk Judicial Council Form TR-130 traffic citations issued in Contra Costa County with a court records date of on or after August 1, 2012, and continuing.  As I understand you have been informed, the Court is reviewing your information request.  The focus of this review includes consideration of statutory, regulatory, and constitutional privacy concerns with disclosure of personal information contained on these citation forms.  More specifically, the Court continues to review the possible application of the federal Driver's Privacy Protection Act (DPPA), 18 U.S.C. sections 2721-25 and CFR Title 45 Public Welfare, Part 46 Protection of Human Subjects, to your request.

19

20 (Compl. ¶ 14(*l*) & Ex. B at 1; Torre Decl., ¶¶ 4-5.)  The Superior Court also informed Robertson

21 that, in any event, budget cuts and the large volume of traffic citations the Superior Court receives

22 each month prevented it from providing him with access on the terms he proposed.  (Compl.

23 ¶ 14(*l*) & Ex. B at 1; Torre Decl., ¶ 9.)  Instead, he would obtain access "on the same terms and

24 conditions as are offered to all other court users":

25

26

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 1 -

1
2
3
4
5
6
7
8

> Finally, be advised that if the Court concludes it can make these traffic citations available to you for your inspection, the Court would be unable to provide access in the manner you have requested. The Court has experienced severe state funding reductions over the last several years, and does not possess the resources to oversee your review of a large volume of documents (on average, the Court receives more than 11,600 Form TR-130 citations per month) on an on-going basis. If access to these records is granted, supporting your ongoing research in the manner you have requested would necessarily result in the Court disadvantaging other court users with matters pending before the Court. The best the Court would be able to offer you would be an opportunity to inspect the requested citations on the same terms and conditions as are offered to all other court users.

9   (Compl. ¶ 14(*l*) & Ex. B at 1; Torre Decl., ¶ 9.)

10          Robertson nevertheless contends he has a constitutional and common law right to access

11  tens of thousands of these traffic citations. And rather than wait for the Superior Court to finish

12  its evaluation of whether granting his request would contravene the privacy rights of the cited

13  drivers, Robertson seeks to *disrupt* the status quo by way of his injunction and force the Superior

14  Court to take *affirmative* action to provide him access on his unilaterally defined terms.

15  Robertson's requested injunction—and this action as a whole—is premature and substantively

16  flawed. His Motion must be denied.

17          First, Robertson has not established a justiciable case, much less a right to preliminary

18  injunctive relief. Contrary to his broad allegations, Robertson's specific evidence demonstrates

19  that he has *not* been denied access to the traffic citations. As established by the Superior Court's

20  October 5, 2012 letter—which Robertson attached to his Complaint and his Motion—he knows

21  the Superior Court is considering his request and he has been asked to provide additional

22  information about his research, which he has not done. Because there has been no denial, the

23  outcome of this case depends on facts that may or may not come to fruition, such that Robertson's

24  claims are not ripe for review. The lack of any denial also means that Robertson has not suffered

25  any concrete injury necessary to establish his standing to sue.

26          Second, Robertson seeks a "disfavored" mandatory injunction that would meaningfully

27  *alter* the status quo. This is because it would require the Superior Court to take affirmative

28  action—that is, to retrieve boxes of thousands of paper citations from an off-site storage facility,

Defs.' Opp. to Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 2 -

1  reserve a location for Robertson to review the citations, assign Superior Court personnel to

2  supervise Robertson's review to ensure the integrity of the hard-copy citations, and generally

3  provide access to documents not typically granted to the public—and would give Robertson the

4  full relief he otherwise might obtain in an (unlikely) favorable decision on the merits.

5  Robertson's requested injunction cannot survive even ordinary scrutiny, and certainly cannot

6  survive the heightened scrutiny to which it is subject.

7       Third, as just alluded to, Robertson cannot make the requisite clear showing on *any* of the

8  four factors he must establish to obtain injunctive relief.  Robertson cannot prevail on the merits

9  because he cannot demonstrate a constitutional or common law right of access to traffic citations;

10  he cannot establish irreparable harm because any alleged harm is not sufficiently "real and

11  concrete"; he cannot show the equities tip in his favor because the harm to the Superior Court

12  dramatically outweighs Robertson's isolated and unsupportable complaints; and issuing the type

13  of injunction Robertson seeks actually would harm the public interest.

14       Consequently, Robertson's Motion should be denied.

## STATEMENT OF FACTS

### A.   Robertson Seeks An Injunction Granting Him Unlimited Access to Traffic Citations Containing Drivers' Sensitive Personal Information.

18       The documents Robertson seeks to access—Judicial Council of California Form  TR-130,

19  Traffic/Nontraffic Notice to Appear forms—are traffic tickets.  Significantly, unlike most other

20  documents contained in court files, the TR-130 form contains a significant amount of the cited

21  driver's sensitive personal information, including the individual's physically descriptive

22  information (e.g., height, weight, hair and eye color), driver's license number, home address, and

23  date of birth:

24

25

26

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 3 -

(Doc. 15 at 5.)

Here, Robertson has sought bulk access to this personal information—"one box or batch at a time" (*id.* at 4:4-5)—beginning with "August 2012 records and continuing for successive months" of unspecified length until such time he "complete[s]" his study.  (Compl. ¶ 1 & Ex. A at 1-2.)  Robertson unilaterally decided his review would start on September 4, 2012.  (*Id.*)

**B.  The Superior Court Processes The Sensitive Personal Information Of Approximately 10,000 Cited Drivers Each Month, And Then Stores The Hard-Copy Citations Off Site.**

As explained in the Declaration of Kathryn Bieker (filed concurrently herewith), who is the Superior Court's Senior Financial Services Manager, the Superior Court processes and files approximately 120,000 citations each year for various types of traffic and non-traffic infractions—an average of 10,000 infraction citations *each month*.  (Bieker Decl., ¶ 5.)  The overwhelming majority of those citations involve traffic infractions, which include all Vehicle Code speeding violation citations to which Robertson seeks access.  (*Id.*, ¶¶ 7-8; Compl. ¶ 1 & Ex. A.)  Thus, in any given month, the Superior Court processes and files approximately 10,000

1    traffic infraction citations.  (Bieker Decl., ¶¶ 5, 7-8.)  For the month of August 2012, the first

2    month specified in Robertson's request, 10,369 infraction citations were processed. (*Id.*, ¶ 6.)

3           Traffic citations are mailed or delivered to the Superior Court's Centralized Traffic Unit in

4    Walnut Creek by the 90-plus law enforcement agencies that issue them in Contra Costa County.

5    (*Id.*, ¶ 9.)  There, clerks separate the citations by the corresponding court location and organize

6    them based on which agency issued the citation.  (*Id.*)  Clerks then input certain information from

7    each citation into the Superior Court's case management system, and scan copies of the original

8    hard-copy citations into a separate database.  (*Id.*, ¶ 10.)  Both the information in the case

9    management system  and the scanned images are accessible only by the Superior Court, and not

10   the public.  (*Id.*)  The hard-copy citations remain the official records of the Superior Court.  (*Id.*,

11   ¶ 11.)

12          After being processed and scanned, the hard-copy citations are organized into bundles

13   consisting of 25 citations each, according to the day on which they were scanned.  (*Id.*, ¶ 12.)

14   Those bundles are boxed up for storage at the Walnut Creek storage location.[1]  (*Id.*)  The Walnut

15   Creek storage location is situated in an administrative building that is not open to the public.  (*Id.*,

16   ¶ 15.)

17          One box contains approximately 6,000 to 10,000 citations.  (*Id.*, ¶ 12)  Each box is labeled

18   with only the date on which the citations it contains were scanned, which may not be the same as

19   the date the citation was issued.  (*Id.*, ¶ 14.)  The only way to identify a particular paper citation is

20   to search through every box labeled with the date on which the desired citation was scanned.  (*Id.*)

21          **C.     The Superior Court Provides Reasonable Access To Court Records.**

22          It has long since been settled by the Supreme Court that there is no *absolute* right to

23   access court records; rather, "[e]very court has supervisory power over its own records and files."

24   *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978).  To that end, the California Legislature

25   codified the public's right to "*reasonable* access" through Government Code section 68150(*l*):

26   "Unless access is otherwise restricted by law," court records of all types, "shall be made

---

27   [1] Notably, Robertson seeks access to citations stored at the Martinez facility (Compl., Ex.
28   A at 1), but no traffic citations are stored there;  they all are stored at the Walnut Creek facility
     (Bieker Decl., ¶ 13).

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 5 -

1    reasonably accessible to all members of the public for viewing and duplication . . . ." Cal. Gov't

2    Code § 68150(*l*); *see also* Cal. R. Ct. 2.500(a), 2.550(c).  Given the administrative burden public

3    access necessarily imposes on courts, the California Government Code also permits courts to

4    charge reasonable fees for copying and for record searches taking more than ten minutes.  Cal.

5    Gov't Code § 70627.   The Superior Court provides reasonable access to court records in

6    accordance with state and federal law.

7          In particular, members of the public generally can request access to non-confidential civil,

8    family, small claims, probate, and criminal court records by appearing before a clerk at the

9    Superior Court and requesting access.  (Bieker Decl., ¶ 18; Torre Decl., ¶ 8.)  Because of the

10   Superior Court's limited resources, members of the public are provided access to no more than 25

11   files in a single day.  (*Id.*)

12         No fee is charged for the first seven files requested.  (*Id.*, ¶ 19.)  A $15 fee is charged if a

13   member of the public requests more than seven files at one time pursuant to California

14   Government Code section 70627(c), as such searches generally take more than 10 minutes to

15   complete.  (*Id.*)  The Superior Court will make copies of files on request, at a fee of  .50 cents per

16   page.  (*Id.*)  A list of these and other fees is available on the Superior Court's website at

17   http://www.cc-courts.org/_data/n_0003/resources/live/2012PublicFeeScheduleJuly.pdf.

18   (*Id.*, ¶ 20.)  Court records in Unlimited Civil Complex Litigation cases also are available through

19   the Superior Court's website.  (*Id.*, ¶ 21.)

20         Members of the public also can request access to copies of traffic citations issued to them

21   as the cited driver by appearing before a clerk at the Superior Court.[2]  (*Id.*, ¶ 16.)  The clerk can

22   locate the citation by searching the database of scanned citations by citations number, violation

23   date, docket number, name, California driver's license number, or vehicle license number and can

24   print a copy of the scanned citation.  (*Id.*)  No fee is charged in that circumstance.  (*Id.*)

25

26

27   ─────────────────

28        [2] The cited driver's  guardian or legal representative also may access to traffic citations
     issued to the cited driver.  (Torre Decl., ¶ 8.)

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 6 -

1

### D.    The Superior Court Has Not Denied Robertson's Request.

2       Contrary to the gravamen of Robertson's Complaint and Motion, the Superior Court has

3   *not* denied his request.  On October 5, 2012, the Superior Court's Executive Officer Kiri Torre

4   responded to Robertson's request by informing him "the Court is reviewing your information

5   request," and explaining the Superior Court was considering whether disclosure of the sensitive

6   personal information contained on the traffic citations would implicate any "statutory, regulatory,

7   [or] constitutional privacy concerns":

8

9       I write to you as the Chief Executive Officer for the Contra Costa Superior Court (the
        Court) in response to your request to physically inspect bulk Judicial Council Form TR-

10      130 traffic citations issued in Contra Costa County with a court records date of on or
        after August 1, 2012,  and continuing.  As I understand you have been informed, the

11      Court is reviewing your information request. The focus of this review includes
        consideration of statutory, regulatory, and constitutional privacy concerns with

12      disclosure of personal information contained on these citation forms.  More specifically,
        the Court continues to review the possible application of the federal Driver's Privacy

13      Protection Act (DPPA), 18 U.S.C. sections 2721-25 and CFR Title 45 Public Welfare,
        Part 46 Protection of Human Subjects, to your request.

14

15  (Torre Decl., ¶¶ 4-5.)  Neither Ms. Torre nor Ms. Bieker is aware of any member of the public,

16  other than an individual's guardian or legal representative, previously asking to access traffic

17  citations that did not concern themselves as the cited driver.  (*Id.*, ¶ 2; Bieker Decl., ¶ 17.)

18  Consequently, this is the first time the Superior Court has confronted the serious privacy concerns

19  raised by Robertson's request.  In an effort to resolve those concerns, Ms. Torre requested

20  Robertson to provide additional information regarding his research.  (Torre Decl., ¶ 6.)

21       In her letter, Ms. Torre also explained that, like all California courts, the Superior Court is

22  under severe budgetary constraints, and thus lacks the resources to provide him with access to the

23  tens of thousands of TR-130 forms it receives each month on the terms he unilaterally dictated.

24  (*Id.*, ¶ 9.)  As Ms. Torre explains in her declaration (filed concurrently herewith), satisfying

25  Robertson's request  on his terms would require the Superior Court to spend precious resources

26  retrieving boxes of citations from the storage facility in Walnut Creek, reserving a location for

27  Robertson to review the citations, and assigning court personnel to supervise Robertson's review

28  to ensure the integrity of the hard-copy citations.  (*Id.*, ¶ 10.)

1

   **E.     When Robertson Did Not Immediately Receive Access, He Filed Suit.**

2         Robertson neither provided the Superior Court with the information Ms. Torre requested,

3   nor proposed alternative terms of access.  (Torre Decl., ¶¶ 7, 11.)  Instead, he engaged a lawyer,

4   who likewise ignored the Superior Court's information request,[3] and filed suit.  Robertson's

5   Complaint represents his *third* attempt to obtain relief based on a claim he has been denied access

6   to certain traffic tickets to which he claims to have a First Amendment and federal common law

7   right of access.[4]  He does not.  His case should be dismissed; but, at a minimum, his Motion for

8   Preliminary Injunctive Relief must be denied.

9                                          **ARGUMENT**

10  **I.     ROBERTSON'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED—
           AND THIS CASE SHOULD BE DISMISSED—BECAUSE ROBERTSON DOES**

11         **NOT HAVE A JUSTICIABLE CASE.**

12        As detailed in the Superior Court's pending Motion to Dismiss, this Court lacks

13  jurisdiction over the Complaint because Robertson's claims are not ripe, and he lacks standing to

14  assert them.  (Doc. 16 at 11-15); *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121

15  (9th Cir. 2010) ("The Article III case or controversy requirement limits federal courts' subject

16  matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe'

17  for adjudication").  The Superior Court need not address those grounds for dismissal here, except

18  to respond to Robertson's contention in the Motion that he has standing.

19        As discussed above, Robertson's access request has not been denied.  Consequently, the

20  cases he cites in an effort to demonstrate he has standing—which stand for the unremarkable

21  _____

22        [3] Robertson's counsel also disregarded a letter from the Superior Court's outside counsel
    reiterating that Robertson's request was under review and that the Superior Court would "be back
23  in touch." (Reilley Decl. ¶ 2 & Ex. A (10/18/2012 letter).)  Any mention of that correspondence is
    curiously absent from Robertson's Complaint and Motion.

24        [4] The most recent effort was about a year ago, when Robertson, through his current
    counsel, prematurely filed suit against the Superior Court of California, County of San
25  Bernardino, when the court did not immediately grant his request for bulk access to traffic tickets
    on his terms.  *See Robertson v. Elwell, et al.*, No. 11-cv-07879-CBM-OP (C.D. Cal.) (voluntarily
26  dismissed without prejudice on July 13, 2012, after motion to dismiss was granted for failure to
    effect proper service).  Before that, Robertson filed a writ action against the Superior Court of
27  California, County of San Diego, which he then dismissed a month later. *See Robertson v.
    Superior Court of California, County of San Diego*, San Diego Superior Court Case No. 37-2011-
28  00092828-CU-WM-CTL, available at https://roa.sdcourt.ca.gov/roa/faces/CaseSearch.xhtml.

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 8 -

1    proposition that the press and public have standing to challenge *actual denials* of access to court

2    records or proceedings—are inapposite.  *See Pansy v. Stroudsburg*, 23 F.3d 772, 777 (3d Cir.

3    1994) ("third parties have standing to challenge protective orders and confidentiality orders");

4    *Times Publishing Co. v. United States Dist. Court*, 510 U.S. 907 (1993) (newspaper had "standing

5    to intervene for the purposes of challenging its denial of access to the underlying litigation");

6    *Globe Newspapers Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (where criminal

7    proceedings are closed, "representatives of the press and general public must be given an

8    opportunity to be heard on the question of their exclusion").

9         Robertson also suggests the fact that he was not afforded "immediate access to review"

10   the citations gives him standing.  (Doc. 15 at 9.)  But the cases on which Robertson relies for that

11   argument involve injury caused by restraint on the freedom of *expression or speech*, not restraint

12   on access to court records.  *See Elrod v. Burns*, 427 U.S. 347, 357 (1976) (freedom of belief and

13   association); *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1062-64 (9th

14   Cir. 1995) (freedom of association).  There is an important distinction between freedom of

15   expression cases and those involving access to information; although both are *rooted* in First

16   Amendment principles, they have developed along distinctly different lines.  *See Houchins v.*

17   *KQED, Inc.*, 438 U.S. 1, 9-10 (1978) (distinguishing right to access information cases from First

18   Amendment cases where courts are "concerned with the freedom of the media to communicate

19   information once it is obtained").  Thus, although Robertson attempts to conflate the two, the

20   United States Supreme Court has made clear that they are *not* intrinsically linked:

21              There are few restrictions on action which could not be clothed by
              ingenious argument in the garb of decreased data flow.  For
22              example, the prohibition of unauthorized entry into the White
              House diminishes the citizen's opportunities to gather information
23              he might find relevant to his opinion of the way the country is being
              run, but that does not make entry into the White House a First
24              Amendment right.  *The right to speak and publish does not carry*
              *with it the unrestrained right to gather information.*
25

26   *Id.* at 12 (internal quotation marks omitted and emphasis added).  For this reason, Robertson's

27   reliance on First Amendment speech and association cases to establish standing is misplaced.

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 9 -

In the context of access cases, courts have *approved* delays in granting access to judicial records where either doubts exist as to whether a right of access attaches to the material, or countervailing considerations may justify withholding access.  *See In re Newark Morning Ledger Co.*, 260 F.3d 217, 226 (3d Cir. 2001) ("the District Court properly delayed public access to the materials and proceedings [in connection with contempt motion] until a proper determination could be made whether the motion implicated secret grand jury information" to which there is no First Amendment right of access); *United States v. Rajaratnam*, 708 F. Supp. 2d 371, 376 (S.D.N.Y. 2010) (requiring all Title III wiretap material, the disclosure of which could jeopardize defendants' Sixth Amendment rights, to remain under seal until the court  ruled on defendants' motions to suppress that the wiretaps).

Here, the October 5, 2012 letter from the Superior Court—which is attached to the Complaint and the Motion—and the concurrently filed Declaration of Kiri Torre establish the Superior Court did not provide immediate access because it was in the process of assessing the merits of Robertson's access claim and considering countervailing privacy interests.  That prudent approach does not confer standing on Robertson.

## II.   ROBERTSON FAILS TO SATISFY THE FOUR FACTORS THAT MIGHT OTHERWISE JUSTIFY THE "DISFAVORED" INJUNCTION HE SEEKS.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; citation omitted).  In *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008), the Supreme Court affirmed that a plaintiff seeking a preliminary injunction must clearly show each of the following factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

Here, Robertson cannot satisfy a single factor supporting an injunction, much less all four.  That conclusion is buttressed by the stricter scrutiny that must guide this Court's consideration of Robertson's requested mandatory injunction.

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A. **Robertson's Requested Mandatory Injunction Is "Disfavored" And Subject To Even Stricter Scrutiny.**

To avoid the more stringent scrutiny applied to disfavored mandatory injunctions, Robertson contends that the public historically had the right to review and inspect court records, and that his requested injunction would therefore preserve the status quo, such that his requested injunction is prohibitory in nature, not mandatory.  (Doc. 15 at 7-8.)  *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (a "mandatory" injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored") (internal quotation marks and citations omitted); *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (stating that mandatory preliminary injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").  Robertson's construction is flawed in several respects.

First, Robertson's position assumes too much.  There is no First Amendment right to traffic citations.  (*See* Section II.B, *infra*.)  Thus, even if there were a "presumption" in First Amendment cases that the status quo is the condition in which a person is free to exercise their rights (there is not), Robertson cannot invoke it here.

Second, Robertson mischaracterizes the nature of his requested relief.  A prohibitory injunction *prevents* a party from taking action, whereas "[a] mandatory injunction orders a responsible party to 'take action.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879-80 (9th Cir. 2009) (vacating mandatory injunction requiring defendant to take affirmative steps to recall infringing drug where record failed to establish harm) (internal quotation marks omitted).  Here, by asserting a right of access to paper copies of every single traffic ticket on file with the Superior Court since August 1, 2012, Robertson seeks an order requiring the Superior Court to *affirmatively act* by retrieving boxes of citations from the storage facility in Walnut Creek, reserving a location for Robertson to review the citations, and assigning court personnel to supervise Robertson's review to ensure the integrity of the hard-copy citations.  (Torre Decl., ¶ 10.)  Robertson's contention that the Superior Court needs "to take no affirmative action" to provide him the requested access is absurd.  (Doc. 15 at 8.)

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

1    <u>Third</u>, the mandatory nature of Robertson's requested injunction is underscored by the fact

2    it does not seek to *preserve* the status quo, but instead to meaningfully alter it.  "Status quo" is the

3    last uncontested status that preceded the pending controversy.  *See Dep't of Parks & Rec. v.*

4    *Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Here, the status quo is that

5    members of the public may access copies of traffic citations issued to them (as the cited

6    driver)[5]—as well as up to 25 other non-confidential civil, family, small claims, probate, and

7    criminal court records a day—by appearing before a clerk at the Superior Court, requesting

8    access, and paying applicable fees.   (Bieker Decl., ¶¶ 15, 17-19; Torre Decl., ¶ 8.)  Ordering the

9    Superior Court to grant Robertson access to thousands of original traffic citations, and the

10   sensitive personal information they contain, for his ongoing and unlimited review, free of charge,

11   is the antithesis of preserving the status quo in this case.  It would alter the Superior Court's

12   procedures in an unprecedented way.

13   <u>Fourth</u>, Robertson's requested injunction would award him all the relief he might be

14   entitled to following a full trial on the merits, which itself is disfavored.  "[I]t is not usually

15   proper to grant the moving party the full relief to which he might be entitled if successful at the

16   conclusion of a trial.  This is particularly true where the relief afforded, rather than preserving the

17   status quo, completely changes it."  *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808-09

18   (9th Cir. 1963); *see Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484,

19   486 (8th Cir. 1993).  Robertson's requested injunction would require all the same affirmative

20   action from the Superior Court as would be required from an (unlikely) judgment on the merits.

21   Robertson's requested mandatory injunction is both disfavored and subject to heightened

22   scrutiny, and should be denied.

23   **B.    Robertson Cannot Succeed On The Merits.**

24   **1.    The First Amendment Does Not Guarantee Robertson Access To The**
     **Sensitive Information Contained In Traffic Citations.**
25

26   The Supreme Court has held the First Amendment grants both the public and the press a

27   "qualified" or limited right of access to criminal judicial proceedings and the transcripts of such

28   [5] The cited driver's  guardian or legal representative also may access to traffic citations
     issued to the cited driver.  (Torre Decl., ¶ 8.)

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 12 -

1    proceedings.  *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9-10 (1986).  "The Supreme

2    Court has not addressed the question whether the first amendment right of public access extends

3    to documents."  *In re Search Warrant for Secretarial Area Outside*, 855 F.2d 569, 573 (8th Cir.

4    1988); *see also United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998).  However, many

5    courts, including the Ninth Circuit, have concluded the qualified First Amendment right of access

6    extends to "*certain* judicial documents."  *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d

7    Cir. 2004) (emphasis added) (citing cases); *United States v. Bus. of the Custer Battlefield Museum*

8    *& Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (noting the existence of a "qualified … 'a First

9    Amendment right of access to criminal proceedings' and documents therein"); *Va. Dep't of State*

10   *Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) ("the First Amendment guarantee of

11   access has been extended only to particular judicial records and documents").

12        Most courts use the "experience and logic" test articulated by the Supreme Court in *Press-*

13   *Enterprise* to determine which documents are entitled to qualified First Amendment protection.

14   *See Leigh v. Salazar*, 677 F.3d 892, 898 (9th Cir. 2012) (applying the *Press-Enterprise* test).  The

15   "experience" prong of the test consider whether the documents "have historically been open to

16   the press and general public."  *Press-Enterprise*, 478 U.S. at 8.  The "logic" prong considers

17   whether "public access plays a significant *positive* role in the functioning of the particular process

18   in question."  *Id.* (emphasis added).

19                    a.      **"Experience" Does Not Recognize A Right To Access Traffic**

20                            **Citations.**

21        There is no historical experience of public access to traffic citations, in part because they

22   did not exist until relatively recently in the nation's history.  *See In re Copley Press, Inc.*, 518 F.3d

23   1022, 1027 (9th Cir. 2008) (finding "no historical experience of public access to" particular

24   hearings or transcripts of those hearings where "the hearings didn't exist until quite recently").

25   Indeed, the lack of a single case addressing whether there exists a public right of access to traffic

26   citations confirms there is no such *tradition* of access.[6]  Absent a tradition of access, no qualified

27   ───────────────
         [6] The lack of any tradition of access also is verified by the experiences of Ms. Torre and
28   Ms. Bieker, in which no member of the public previously has asked to access traffic citations
     unless they themselves were the cited driver or the legal guardian or representative of the cited
     driver.  (Torre Decl., ¶ 2; Bieker Decl., ¶ 17.)  Robertson's allegation that an employee of the

1   First Amendment right of access attaches.  *In re Reporters Comm. for Freedom of the Press*, 773

2   F.2d 1325, 1332 (D.C. Cir. 1985) ("An historical tradition of at least some duration is obviously

3   necessary, particularly to support a holding based upon the remote implications of a constitutional

4   text.") (Scalia, J.).

5          Robertson purports to demonstrate a history of access to court records based on his

6   *personal* experience with other California superior court locations.[7]  (*See* Doc. 15 at 6, Robertson

7   Decl. ¶ 5.)  But it is the *jurisprudential* history, not one's individual experience (even accepting it

8   as true), that determines whether a historic right of access exists.  In considering the public's right

9   of access to judicial proceedings or information, the Supreme Court has long grounded its

10  analysis in historical considerations of early-American jurisprudence, including traditions pre-

11  dating enactment of the Bill of Rights and the Constitution itself.  *See Press-Enterprise*, 478 U.S.

12  at 10-11 (discussing trial of Aaron Burr and noting that "[f]rom Burr until the present day, the

13  near uniform practice of state and federal courts has been to conduct preliminary hearings in open

14  court"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,  565-66 (1980) (examining cases

15  brought in England both before and after the Norman Conquest in 1066 and finding "nothing to

16  suggest that the presumptive openness" of English courts "was not also an attribute of the judicial

17  systems of colonial America").  Thus, whether an historical tradition of access to information

18  _____

    (continued…)

19
    Walnut Creek branch of the Superior Court "said she was not sure what Court Records he was
20  requesting since she was not sure what a 'TR-130' record was" (Compl. ¶ 14(b)) also underscores
    this point.

21         [7] The Superior Court disputes Robertson's vague and unsubstantiated claims that he has
    obtained from other courts access to traffic citations under the terms he seeks here.  Given the
22  time constraints imposed by Robertson's late-Thanksgiving-Eve motion filing, the Superior Court
    was unable to obtain refuting declarations by the December 5, 2012 deadline for filing this
23  opposition.  Indeed, upon receiving earlier that same day the Court's Order (Doc. 20) denying the
    Superior Court's Motion to Vacate or Continue Hearing on Plaintiff's Motion for Preliminary
24  Injunctive Relief, the Superior Court's counsel reached out to Ms. Cummins, Robertson's
    counsel, seeking a stipulation to an extended briefing schedule, as this Court's Order stated the
25  parties could do.  The Superior Court's counsel proposed the schedule Robertson stated he would
    agree to in his Opposition to Defendants' Administrative Motion, but Ms. Cummins refused to
26  stipulate because her client apparently was not available for consult.  (Reilley Decl. ¶ 3; Doc. 19
    at 2:23-3:1.)  The Superior Court's counsel's later call to Ms. Cummins trying to reach an
27  alternative arrangement went unreturned.  (Reilley Decl. ¶ 3.)  Thus, the Superior Court was
    forced to file its papers.  The Superior Court reserves its right to submit responsive declarations at
28  a later date.

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 14 -

exists depends on a longstanding recognition in our justice system that such access is warranted in light of the purposes served by allowing public scrutiny of the information.

And even if Robertson's experiences with other California courts were relevant, they would not support an injunction granting the type of unlimited access to paper traffic citations Robertson seeks here.

### b. "Logic" Does Not Recognize A Right To Access Traffic Citations.

As noted above, the "logic" prong requires the Court to evaluate whether access plays an essential and positive role in the proper functioning of the judicial process. In considering this inquiry, courts evaluate whether access will "enhance the quality and safeguard the integrity of factfinding, assure an appearance of fairness, function as a check on the judicial and governmental process, and play a cathartic role in permitting the community to observe justice being done." *In re Reporters*, 773 F.2d at 1336-37 (citations omitted); *see also N. Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 217 (3d Cir. 2002) (considering similar factors in assessing the logic prong); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 704-05 (6th Cir. 2002) (same).

Here, allowing public access to the sensitive information contained in traffic citations does not play a significant *positive* role in the judicial process; in fact, just the opposite is true. Public access to traffic citations, in isolation, will not improve the fact-finding process associated with traffic citations, and it will not impact the public's perception of the administration of justice. Indeed, the actual court proceedings in which the traffic citations are adjudicated—*e.g.*, appearances to enter a plea or a trial on the merits—*are* open to the public and thereby advance the goals to which the logic prong is aimed. By contrast, permitting public access to the sensitive personal information contained in the citations—information not otherwise available in court records—could violate the cited drivers' privacy rights and put them at risk for harassment or identity theft, thereby *negatively* impacting the public's perception of the judicial system.[8] The

---

[8] Indeed, consistent with these concerns, the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721 *et seq.*, restricts the ability of states and private actors to disclose drivers' personal information contained in department of motor vehicle records. *See Reno v. Condon*, 528 U.S. 141, 143-46 (2000). The DPPA defines "personal information" to include much of the information contained on TR-130 traffic citation forms, including "an individual's … driver identification number, name, [and] address." 18 U.S.C. § 2725(3). Likewise, the Federal

1   Superior Court is sensitive to Robertson's expressed effort to root out invidious discrimination,

2   but the important privacy concerns raised by public access to the sensitive information in traffic

3   citations will not have a positive impact on the judicial system.

### 2.   Federal Common Law Does Not Guarantee Robertson Access to The Sensitive Information Contained In Traffic Citations.

6   The federal common law right of access attaches only to "judicial documents." *Lugosch*

7   *v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  Courts have recognized "the

8   mere filing of a paper or document with the court is insufficient to render that paper a judicial

9   document subject to the right of public access." *Id.* (citation omitted).  Instead, a paper must

10  "properly come before the court in the course of an adjudicatory proceeding and [be] relevant to

11  that adjudication" for the common law right to attach.  *FTC v. Standard Financial Mgmt. Corp.,*

12  830 F.2d 404, 412-13 (1st Cir. 1987); *see also United States v. El-Sayegh*, 131 F.3d 158, 163

13  (D.C. Cir. 1997) (holding that "what makes a document a judicial record and subjects it to the

14  common law right of access is the role it plays in the adjudicatory process"); *Lugosch*, 435 F.3d at

15  119 ("to be designated a judicial document, 'the item filed must be relevant to the performance of

16  the judicial function and useful in the judicial process") (citations omitted).

17  Put differently, "the common-law right of access extends to 'materials on which a court

18  relies in determining the litigants' substantive rights.'"  *In re Providence Journal Co.*, 293 F.3d 1,

19  9-10 (1st Cir. 2002) (citation omitted).  *See also Brown & Williamson Tobacco Corp. v. FTC*, 710

20  F.2d 1165, 1181 (6th Cir. 1983) (finding that the common law right of access attached to

21  documents filed by the FTC, noting "[t]he public has an interest in ascertaining what evidence

22  and records the District Court and this Court have relied upon in reaching our decisions"); *In re*

23  *Reporters*, 773 F.2d at 1342 (Wright, J., concurring in part and dissenting in part) ("federal courts

24  have extended a conditional common law right of access … to evidentiary materials on which a

25  (continued…)

26  Rules of Civil and Criminal Procedure require similar information—including home address and
    date of birth—generally be redacted from court filings that otherwise would be open to the public.

27  Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1.  It is improbable that there exists a *constitutional* right
    of access to the very information that Congress has taken steps to prevent from being publicly

28  disclosed.

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 16 -

1  court relies in issuing an order determining a litigant's substantive rights"); *Wilk v. Am. Med.*

2  *Ass'n*, 635 F.2d 1295, 1299 n.7 (7th Cir. 1980) (noting that "[i]f the purpose of the common law

3  right of access is to check judicial abuses, ... then that right should only extend to materials upon

4  which a judicial decision is based").

5  Robertson's requested traffic citations are not "judicial documents" for purposes of federal

6  common law because they are not relied upon by a court in *deciding* the substantive matter.

7  When a TR-130 form is filed with the court, it "constitute[s] a complaint." *Id.* § 40513(b); *see*

8  *also* Cal. Pen. Code § 853.9(b).  A driver who receives a TR-130 notice to appear may plead

9  guilty or nolo contendere, Cal. Veh. Code § 40513(a), or may plead not guilty and proceed to

10  trial.  *Id.* § 40519.  In any situation, the court will not rely upon the traffic citation in adjudicating

11  the case, but rather on the driver's plea or evidence presented at trial.  *See Mercury Interactive*

12  *Corp. v. Klein*, 158 Cal. App. 4th 60, 103 (2007) ("pleadings, including complaints, are not

13  typically evidentiary matters that are submitted to a jury in adjudicating a controversy"); *San*

14  *Diego Police Officers Ass'n v. City of San Diego*, 29 Cal. App. 4th 1736, 1744 (1994) (stating

15  verified complaint is not evidence; "[p]leadings are merely formal allegations"); William E.

16  Wegner et al., California Practice Guide: Civil Trials and Evidence ¶ 15:51 (The Rutter Group

17  2012) ("pleadings are not ordinarily received in evidence").  The TR-130 traffic citations simply

18  are not relied upon by courts in determining a driver's guilt.  Thus, Robertson cannot establish a

19  federal common-law right of access to them.

### 3.    California State Law Does Not Guarantee Robertson Access to The Sensitive Information Contained In Traffic Citations, Either.

22  California law recognizes a right of "reasonable access" to "court records."  *See* Cal.

23  Gov't Code § 68150(*l*); Cal. Rs. Ct. 2.500 & 2.503; Cal. Const., art. I, § 3.  But it is far from

24  settled—contrary to what Robertson would have the Court believe—whether that general right of

25  "reasonable access" to "court records" includes a right to inspect traffic tickets that contain

26  sensitive personal information, or whether "reasonable access" includes the type of ongoing and

27  unlimited access to tens of thousands of paper citations Robertson seeks here.  No California

28  court has considered these questions, and neither of them is resolved by the broad language of the

- 17 -

Defs.' Opp. to Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

state constitutional provisions and the case law on which Robertson relies.  Significantly, the authorities on which Robertson relies discuss a right to access "court records," "judicial records," and "information concerning the conduct of the people's business."  (Doc. 15 at 11-12.)  But, while Robertson conveniently defines traffic citations as "court records" (Doc. 15 at 1:7-9), he points to no case or legislative enactment establishing that traffic citations are the type of court records to which a presumption of public access attaches.

In sum, no First Amendment, federal common-law, or state law right of access attaches to traffic citations.  Therefore, he cannot clearly show that he is likely to succeed on the merits, and his Motion must be denied.

### C.   Robertson Cannot Demonstrate A "Real and Concrete" Harm, Much Less *Irreparable* Harm.

To obtain the mandatory injunctive relief he seeks, Robertson must demonstrate irreparable harm that is not just hypothesized, but is "real and concrete."  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201-02 (9th Cir. 1980).  Robertson cannot meet that burden.

Robertson attempts to turn the entire analysis on its head by contending "*Defendants* will not suffer any harm" if injunctive relief *is* granted.  (Doc. 15 at 16.)  But that is not the standard. The irreparable injury prong must consider the harm to the *plaintiff* if the requested relief is *not* granted, not the harm to the defendant if the relief is granted.  *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1200.  Here, apart from a conclusory statement in his argument heading, Robertson does not identify *any* "real and concrete" harm to himself, much less irreparable harm. (*See* Doc. 15 at 16-17.)

At best, Robertson relies on a host of inapposite authorities for the generic and unsupportable claim that *any* delay in access to court records constitutes irreparable harm.  (*Id.* at 1, 16.)  Nearly all the cases Robertson cites, however, address harm associated with restraints on the freedom of *expression or speech*, not restraints on access to court records.  *See, e.g., Elrod*, 427 U.S. at 357 (freedom of belief and association); *Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1538-39 (1991) (interference with freedom of speech).  And the one case

1   Robertson cites that does involve a restraint on access to court records, does so in the context of a

2   sealing order, which is not at issue here.  *See Associated Press v. United States Dist. Court*, 705

3   F.2d 1143, 1144-45 (9th Cir. 1983) (sealing documents filed in regard to criminal pre-trial

4   proceedings).

5       As discussed above, the protection given to freedom of expression as compared to that

6   given to the right of access to information are not equivalent.  *See supra* pp. 9-10.  Consequently,

7   First Amendment speech and association cases—as well as those involving sealing orders—do

8   not support a finding of irreparable harm here.  At bottom, there is nothing here to support a

9   presumption of irreparable harm where no right of access has been denied in the first place.

10      **D.     Robertson Cannot Show The Balance Of Equities Tips In His Favor.**

11      Before a preliminary injunction may be issued, this Court "must balance the competing

12  claims of injury and must consider the effect on each party of the granting or withholding of the

13  requested relief."  *Winter*, 555 U.S. at 24; *Earth Island Institute v. Carlton*, 626 F.3d 462, 475

14  (9th Cir. 2010) ("The assignment of weight to particular harms is a matter for district courts to

15  decide.").  Here, Robertson argues his alleged harm—a purported denial of access to traffic

16  citations—"far outweighs" any potential harm to the Superior Court if injunctive relief is granted.

17  (Doc  15 at 16-17.)  Robertson's claim overreaches.

18      Robertson will not be harmed *at all* if the injunction is not granted because, as discussed

19  above, he has suffered *no* injury because there has been no denial.  By contrast, the Superior

20  Court will suffer substantial harm if the injunction is granted.  As already detailed, granting the

21  injunction would require the Superior Court to take affirmative action to provide Robertson with

22  access to the citations on his terms.  Specifically, granting Robertson's request on his terms would

23  require the Superior Court to spend precious resources retrieving boxes of citations from the

24  storage facility in Walnut Creek, providing a secure location for Robertson to review the

25  citations, and assigning court personnel to supervise Robertson's review to ensure the integrity of

26  the hard-copy citations.  (Torre Decl., ¶ 10.)  Thus, the balance of equities tips decidedly in favor

27  of the Superior Court and *against* issuance of an injunction.

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 19 -

1

**E.      Robertson's Requested Injunction Will Not Serve The Public Interest.**

2       The Supreme Court has properly cautioned that "courts of equity should pay particular

3   regard for the public consequences in employing the extraordinary remedy of injunction."

4   *Winter*, 555 U.S. at 24 (internal quotation marks omitted).  Robertson here claims the public

5   interest would be served by his requested injunction because "access to court records ensures

6   public confidence in the judiciary, promotes more efficient administration of cases and more

7   accurate fact finding, and gives the public information about how the law is applied . . . ."  (Doc.

8   15 at 18.)  But, contrary to Robertson's contention, no injunction is necessary (or proper) to

9   promote these principles.  As noted above, the actual court proceedings in which traffic citations

10  are adjudicated *are* open to the public, which sufficiently advances those principles.

11      Any additional advancement of those principles that granting access to the citations might

12  allow is eclipsed by the negative impact such access will have on the public interest.  As noted,

13  public disclosure of the sensitive personal information contained in traffic citations could violate

14  the cited drivers' privacy rights and make them vulnerable to identity theft and other crimes.

15  Surely the public has an interest in protecting the personal privacy and safety of drivers by

16  preventing unnecessary disclosures of their personal information.  Indeed, it was that precise

17  public interest that compelled Congress to enact the DPPA.  *See Senne v. Village of Palatine*,

18  2012 WL 3156335, at *8 (7th Cir. Aug. 6, 2012) (en banc) ("safety and security concerns

19  associated with excessive disclosures of personal information held by the State in motor vehicle

20  records were the primary issue[s] to be remedied by the legislation"); 140 Cong. Rec. H2518,

21  H2526 (statement of Congressman Goss) ("The intent of this legislation is simple—to protect the

22  personal privacy and safety of all American licensed drivers").

23      Moreover, the public has an additional interest in not having its taxpayer dollars

24  manipulated in such a way as to essentially fund one individual's own research proclivities by

25  requiring the provision of access on any terms requested.  The public interest does not support

26  Robertson's requested injunction; it discourages it.

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 20 -

### III.   UNDER ANY CIRCUMSTANCE, A BOND IS REQUIRED.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper," and that it may be reversible error to issue an injunction without such security. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (emphasis added). Here, *none* of Robertson's cases support total waiver of the bond requirement. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (affirming injunction without additional bond where funds at issue in injunction were held in sequestration by court); *Pharma. Soc'y of State of N.Y. v. N. Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1175 (2d Cir. 1995) (holding that bonds have been excused in cases involving enforcement of public interests arising out of comprehensive federal health and welfare statutes); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (ruling no abuse of discretion for district court to conclude bond was discretionary based on precedent in that circuit); *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (same). Thus, if the Court were to issue his requested mandatory injunction, a sizeable bond should be required.

### IV.   OBJECTIONS TO AND MOTION TO STRIKE ROBERTSON DECLARATION

Finally, the Superior Court objects to and moves to strike portions of the Declaration of Jason Robertson filed in support of Plaintiff's Motion for Preliminary Injunctive Relief, as follows:

The Superior Court objects to and moves to strike the portions of paragraphs 8, 9(a), 9(b), 9(d), and 9(f) that purport to reflect what various staff members of the Superior Court told Robertson, as those statements are inadmissible hearsay to the extent that they are offered for the truth of the matters asserted therein. Fed. R. Evid. 802.

The Superior Court objects to and moves to strike the sentence "I do not seek or require any searching, review or selection of the Court Records" in paragraph 10 of the Robertson Declaration pursuant to Rule 602 of the Federal Rules of Evidence because that statement is based on speculation rather than personal knowledge, such that it lacks foundation. Robertson has no way of knowing how the Superior Court stores the traffic citations, or what it would entail

1  for the Superior Court to produce those citations in the manner he requests.  Therefore, the

2  sentence is legally unsupportable speculation, not the result of Robertson's personal knowledge.

3        The Superior Court objects to and moves to strike paragraphs 11 and 12 on the same

4  grounds—Robertson sets forth no foundation for his purported knowledge of how the Superior

5  Court functions, including how it stores and uses traffic citations.  And to the extent paragraphs

6  11 and 12 are based on Robertson's understanding of the practices of other courts in the state, he

7  offers no foundation for that knowledge and should be stricken pursuant to Rule 602.  Paragraphs

8  11 and 12 also should be stricken as inadmissible hearsay pursuant to Fed. R. Evid. 802 to the

9  extent Robertson is relying on what someone has told him out of court.

10        The Superior Court objects to and moves to strike paragraph 13, in its entirety, pursuant to

11  Rule 602 because Robertson offers no foundation for his asserted beliefs, which appear to be

12  nothing more than speculation.  To the extent that, in paragraph 13, Robertson is relying on

13  something he was told out of court, the paragraph also should be stricken as inadmissible hearsay.

14  Fed. R. Evid. 802.

15        The Superior Court further objects to and moves to strike the two statements in paragraph

16  13 asserting the Superior Court has adopted a "policy" of withholding court records, as those

17  statements constitute improper legal conclusions.  Civil Local Rule 7-5(b) requires that

18  declarations "contain only facts . . . and . . . avoid conclusions and argument"; a declaration that

19  violates this rule "may be stricken in whole or in part." *Id.*  The Superior Court also objects to

20  and moves to strike the statements regarding a supposed "policy" of denying access to court

21  records in paragraph 13 pursuant to Rule 602, as those statements are pure speculation.

22        The Superior Court objects to and moves to strike the phrase in paragraph 14 stating that

23  Robertson has suffered "irreparable harm" pursuant to Civil Local Rule 7-5(b) and Rule 602

24  because that statement is improperly speculative and constitutes a legal conclusion.

25        For the same reasons, the Superior Court objects to and moves to strike paragraph 15,

26  which purports to identify which of Robertson's rights have been violated and again opines that

27  he has suffered "irreparable harm."  That paragraph consists entirely of speculation,

28  argumentation, and legal conclusion, in violation of Civil Local Rule 7-5(b) and Rule 602.

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

1

**CONCLUSION**

2      In light of the justiciability defects in this case, and the substantive flaws with Robertson's

3   claims, the action should be dismissed in its entirety, as outlined in the Superior Court's Motion

4   to Dismiss.  Under any circumstance, though, Robertson's Motion for Preliminary Injunctive

5   Relief should be denied.

6   Dated: December 5, 2012                    Respectfully submitted,

7                                              JONES DAY

8

9                                             By:    /s/ Robert A. Naeve
                                                       Robert A. Naeve
10

11                                            Attorneys for Defendants
                                              HONORABLE DIANA BECTON, Presiding
12                                            Judge of the Superior Court of California,
                                              County of Contra Costa, and KIRI TORRE,
13                                            Chief Executive Officer of the Superior Court
                                              of California, County of Contra Costa

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Opp. to  Pl.'s Mot. for Prelim. Inj.
CV 12-05389 PJH

- 23 -