UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON ROBERTSON,

    Plaintiff,

    v.

DIANA BECTON, et al.,

    Defendants.

_____/

No. C 12-5389 PJH

**ORDER GRANTING MOTION TO DISMISS; ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Defendants' motion to dismiss the above-entitled action for lack of subject matter jurisdiction and failure to state a claim and plaintiff's motion for a preliminary injunction came on for hearing before this court on February 6, 2013. Plaintiff appeared by his counsel James Chadwick, and defendants appeared by their counsel Robert Naeve. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss and DENIES the motion for preliminary injunction.

**BACKGROUND**

In this action, plaintiff Jason Robertson challenges an alleged denial of access to "court records." He asserts three causes of action – a claim under the Declaratory Judgment Act, a First Amendment claim under 42 U.S.C. § 1983, and a claim for injunctive relief. Defendants are Diana Becton, Presiding Judge of the Contra Costa Superior Court; and Kiri Torre, Executive Officer of the Contra Costa Superior Court. Both defendants are sued in their official capacities only. Plaintiff asserts federal question jurisdiction under 28

U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 over any state law claims.

In the complaint, plaintiff alleges that he is a journalist, and that he seeks access to the court records for "newsgathering" and "news dissemination" purposes. Cplt ¶ 4. Plaintiff asserts that in the course of his business, he "routinely analyzes and reports on cases in the State of California, including cases pending in Contra Costa County regarding traffic and non-traffic offenses," and that he is presently "conducting a study for journalistic purposes concerning the frequency and timing of speeding citations issued in the County of Contra Costa." Cplt ¶ 10. To this end, plaintiff submitted a written request to the Contra Costa Superior Court, asking that it provide him with access to paper copies of every single traffic ticket on file with the Superior Court's Martinez facility since August 1, 2012.

According to the Declaration of Kathryn Bieker, Financial Services Officer of the Contra Costa Superior Court, filed in connection with defendants' opposition to the motion for preliminary injunction, the court processes and files approximately 120,000 citations per year for various types of traffic and nontraffic offenses, the overwhelming majority of which involve traffic infractions, including the speeding violations that plaintiff seeks to investigate. For the month of August 2012, the first month for which plaintiff seeks access, the number of infraction citations processed was 10,369.

Ms. Bieker explains that traffic citations are mailed or delivered to the court's Centralized Traffic Unit in Walnut Creek, by the 90+ law enforcement agencies that issue them in Contra Costa County. There, clerks separate the citations by corresponding court location and organize them based on the agency that issued the citation. Clerks then input information from each citation into the court's case management system, and scan copies of the original hard-copy citations into a separate database. Both the information in the case management system and the scanned images are available only to court personnel. The hard-copy citations remain the property of the court.

After being processed and scanned, the hard-copy citations are organized into bundles consisting of 25 citations each, according to the day they were scanned. Those

2

bundles are boxed up for storage at the Walnut Creek storage location, which is not open to the public. Each box contains 6,000 to 10,000 citations, and is labeled only with the date on which the citations were scanned, which would not be the same date the citations were issued.

Plaintiff's stated purpose for seeking access to the paper citations is to analyze and report on "the number of speeding tickets written by law enforcement, including the percentage of tickets written during each hour of the day, each day of the month, and the amount of fines collected for speeding violations from commercial and non-commercial drivers." Id. He also wants to determine whether law enforcement authorities are "singling out minorities in greater percentages than recent census data would predict." Cplt ¶ 10. Thus, plaintiff is interested in obtaining information regarding the "race and sex of each arrestee, the date and time of arrests, and the nature of infractions and fines imposed." Cplt ¶ 12.

Plaintiff made his initial request in a letter to the court dated Saturday, July 21, 2012. He sent the letter certified mail, and it was signed for by the court on Tuesday, July 24, 2012. Cplt ¶ 11. In this letter, plaintiff requested access to

> [p]aper copies of all Judicial Council of California Form TR-130, Traffic/Nontraffic Notice to Appear forms, for violations of California Vehicle Code sections 22349, 22350, and 22356 (paper Court Records), maintained in the Martinez facility, beginning with paper Court Records dated on or after August 1, 2012, and continuing until I have completed my study of information contained in the paper Court Records.

He added that he was "available to coordinate suitable days and hours [for his inspection] with the court, provided they are not overly restrictive, so as to complete my study and inspection with the minimal amount of disruption to court operations." In addition, he stated that he planned to begin the study on September 4, 2012, and that if he did not hear back from the court by that date, he would be arriving at the Martinez facility on the morning of September 4 to begin inspecting the paper "court records."

On Friday, August 10, 2012, plaintiff called Ms. Torre's office. Cplt ¶ 13. He was told by the person who answered the phone that Ms. Torre would be out until Monday, but

that she (the person answering the phone) would send him an email response. He says he waited "almost two weeks" and received nothing from the court. Cplt ¶ 14.

On August 22, 2012, plaintiff called the Public Information Officer for the court, and left a voicemail message about his request. The Public Information Officer called back that same day and told him the request was "under review." He told her that he planned to begin his study in approximately two weeks, and asked when he would have an answer, but she could not tell him. Id.

Two days later, on August 24, 2012, plaintiff called the Courthouse Records Division, "seeking to expedite his records request." He left a message, and someone called back to say she was not sure what records he was seeking. He returned the call and explained what he wanted. On August 27, 2012, he left a voicemail message for that person saying that his study was starting in two weeks and he needed the records. He received no response to that voicemail message on August 27. Id.

However, on August 29, 2012, he received a voicemail message from the Public Information Officer, saying that she understood plaintiff intended to come to the court on September 4, 2012 to begin reviewing records.[1] She told him that the records would not be available (on that date), and asked for an email address where she could notify him of the court's response to his request. Id. He responded with an email address that same day. On August 31, he received an email message from the Public Information Office saying they had not yet finalized their response to his request. As of September 4, plaintiff still had not received any message regarding when he could review the records.

Plaintiff made additional attempts to obtain the information, and on October 5, 2012, Ms. Torre sent plaintiff a letter stating that the court was still reviewing his request and considering various bases that might warrant denying the request. In particular, Ms. Torre noted, the focus of the court's review included consideration of statutory, regulatory, and constitutional privacy concerns with disclosure of personal information contained on those

---

[1] This September 4, 2013 start date was selected by plaintiff, and was a date exactly six weeks after plaintiff's initial request was received by the court.

4

citation forms.[2]  Ms. Torre cited the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, and CFR Title 45, Public Welfare, Part 46, Protection of Human Subjects.

The DPPA prohibits state departments of motor vehicles from disclosing personal information (from motor vehicle records) that identifies an individual (photograph, social security number, driver identification number, name, address, telephone number, and medical or disability information) unless the disclosure falls within one of the enumerated exceptions.

One of these exceptions is disclosure for "use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals." 18 U.S.C. § 2721(b)(4).  Ms. Torre advised plaintiff that in order for the court to determine whether the stated use (the research study) comes within the intended scope of the DPPA, "it would be helpful for you to provide more information concerning your research on this stated topic, including information on your research design and your study's provision for protection of human research subjects as specified in 45 C.F.R. §§ 46.01 - 46.123."

Ms. Torre did not say when the court's review would be complete, but also added that even if the request were granted, the material could not be provided in the "mass production" way that plaintiff wanted, because of budgetary considerations, and that at most, he would be permitted to inspect records only on the same basis as other court users.  Plaintiff interprets Ms. Torre's letter as a "denial" of his request.

Six days later, on October 11, 2012, plaintiff's attorney wrote a letter to Ms. Torre, claiming that the court had provided "no viable explanation for its refusal to permit access to the requested records;" and asserting that the court was required by the First

---

[2] This personal information is considerable, and includes the driver's name, signature, home address, date of birth, and physical description – height, weight, hair color, eye color, race, sex – plus the driver's license number and the registration number, make, and model of the vehicle, and, if the driver is not the registered owner of the vehicle, the name and address of the registered owner.

Amendment and California law to provide the information that plaintiff was requesting, and that the court had failed to identify any burden or costs associated with allowing plaintiff "full access" to the citations he had requested "as other California courts have done." Plaintiff's attorney also claimed that the DPPA does not apply to the courts, as by its terms it applies only to state departments of motor vehicles, and that the cited regulations do not apply because they relate only to research on human subjects conducted, supported, or otherwise subject to regulation by any federal department or agency . . ."

The attorney threatened to file suit, which she did a week later, on October 18, 2012. Plaintiff apparently never provided any additional information to the court, as requested by Ms. Torre in her October 5, 2012 letter.

Also on October 18, 2012 (before the summons and complaint were served), outside counsel for the Contra Costa Superior Court wrote a letter to plaintiff's counsel, reiterating that plaintiff's request was still under consideration by the court, and noting the court's concern about application of the federal DPPA to the request. The summons and complaint were served on October 31, 2012.

In the complaint, plaintiff asserts that the public and the press have traditionally had access to court records, which they could obtain by simply requesting them from the clerk of the subject Superior Court. Cplt ¶ 18. But now, he asserts, the Contra Costa Superior Court, through Judge Becton and Ms. Torre, has "adopted a policy of withholding Court Records from the public and the press in general, and from [plaintiff] in particular, or stonewalling efforts made by individuals such as [plaintiff] to obtain access to them." Cplt ¶ 19; see also Cplt ¶ 30 (a "policy that has been adopted by the Contra Costa Superior Court, Becton, and Torre"); Cplt ¶ 34 (a "policy of withholding the Court Records").

Plaintiff bases these allegations regarding court "policy" on the fact that under the California Rules of Court, the Presiding Judge of each Superior Court is responsible for establishing policies and ensuring effective management and administration of the court, and the Court Executive is responsible for overseeing the management and administration of the non-judicial operations of the court, including managing the recordkeeping system

6

and court records. See Cplt ¶¶ 31-32.

Plaintiff asserts that the Contra Costa Superior Court has withheld the paper citations from public and press access "without first meeting the procedural and substantive requirements for denying public access to court records established under the First Amendment to the United States Constitution, the California Constitution, the California Rules of Court, and California and federal common law." Cplt ¶ 21; see also Cplt ¶¶ 22-23. Plaintiff claims that these records reflect "the official work of the Contra Costa Superior Court and the [court's] administration of cases in which the public and the press have a justifiable interest, as well as the official work of law enforcement agencies in Contra Costa County." Cplt ¶ 24.

Plaintiff alleges further that under federal law, there is a "presumption of entitlement to disclosure in favor of the party seeking court records," and that before access can be denied, the court must provide sufficient notice to the public and the press to afford them an opportunity to object, and must hold a prompt hearing on any objections to closure, and must make specific findings of fact in support of any determination that proceedings should be closed. Cplt ¶ 25.

Plaintiff asserts that under California law, the prerequisites to what he calls "closure of court proceedings or sealing of court documents" include the requirements that the court provide notice to the public of any contemplated "closure or sealing," that it hold a hearing, and that it make certain express findings supporting "closure or sealing." In support, he cites NBC Subsidiary (KNBC TV) v. Superior Court, 20 Cal. 4th 1178, 1216-18 (1999), a case involving a challenge to a state court's closure of a civil trial to the public, and the sealing of the trial transcripts. Cplt ¶ 26.

Plaintiff contends that after the NBC Subsidiary decision was issued, California Rule of Court 2.550 was adopted, to govern the sealing of court records and to clarify that records lodged or filed with the court may not be sealed without a court order, and that such an order must be obtained any time records are sealed. Under Rule 2.550, the court must make express findings that there is an overriding interest that overcomes the public's

right to access the record, that such overriding interest justifies sealing the record, that a substantial probability exists that said overriding interest will be prejudiced if the record is not sealed, that the proposed sealing request is narrowly tailored, and that no less restrictive means exists to achieve said overriding interest. Cplt ¶ 27.

Finally, plaintiff asserts that the passage of Proposition 59 amended the California Constitution to create a constitutional right of public "access concerning the conduct of the people's business." Cal. Const. art. 1, § 3(b). This provision mandates that the "writings of public officials and agencies shall be open to public scrutiny." Id. Plaintiff contends that the judiciary is subject to this mandate, and that the public and the press have a justifiable interest in "documents which accurately reflect the official work of the court, such as its orders and judgments, its scheduling and administration of cases, and its assignment of judicial officers and administrators." Cplt ¶¶ 28-29.

On November 21, 2012, plaintiff filed a motion for preliminary injunction, seeking an order "restraining [defendants] from withholding public access to the . . . traffic/nontraffic notices to appear for violations of the California Vehicle Code Sections 22349, 22350, and 22356, court records, including but not limited to plaintiff [and his attorneys]."

On November 26, 2012, defendants filed a motion to dismiss, arguing that the court lacks subject matter jurisdiction over plaintiff's claims because the claims are not ripe and because plaintiff lacks standing; that even if the case were ripe, the court should abstain from hearing it under Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941); that plaintiff cannot state a First Amendment claim because the First Amendment does not guarantee a right of access to the personal information contained in traffic citations; and that the court should decline to exercise jurisdiction over any state law claims.

**DISCUSSION**

A.  Motion to Dismiss

    1.  Legal Standards

        a.  Motions to dismiss for lack of subject matter jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power

8

authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, in the present action, plaintiff bears the burden of demonstrating that subject matter jurisdiction exists over this complaint. See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

The Constitution limits the federal judiciary power to designated "cases" and "controversies." U.S. Const., Art. III, § 2. Thus, federal courts can determine only those matters that arise in the context of a genuine "case" or "controversy" within the meaning of Article III. SEC v. Medical Committee for Human Rights, 404 U.S. 403, 407 (1972).

b.   Motions to dismiss for failure to state a claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to

"accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

2. Defendants' motion

Defendants make four main arguments in support of their motion – that the complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the claim is not ripe and because plaintiff has not suffered an injury; that the court should decline to rule in this case based on principles of Pullman abstention; that plaintiff cannot state a claim for a First Amendment or federal common law right of access to paper traffic tickets; and that having dismissed the federal claims, the court should decline to exercise jurisdiction over any remaining state law claims.

In their first main argument, defendants contend that the complaint must be dismissed for lack of subject matter jurisdiction. Defendants note that the October 5, 2012 letter from Ms. Torre advised plaintiff that his request was still under review, and they assert that because the court has not denied plaintiff's request, he has no "justiciable case" – that is, he has suffered no injury and therefore lacks standing to bring the case, and his claims are not ripe.

Standing is a critically important jurisdictional limitation. It is "an essential and unchanging part of the case-or-controversy requirement of Article III. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing is not subject to waiver, and must be considered by the court even if the parties fail to raise it. See United States v. Hays, 515

10

U.S. 737, 742 (1995).  The burden is on the party who seeks the exercise of jurisdiction in his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." Id. at 743.

To establish a "case or controversy" within the meaning of Article III, a plaintiff must, at an "irreducible minimum," show an "injury in fact" which is concrete and not conjectural, a causal connection between the injury and defendant's conduct or omissions, and a likelihood that the injury will be redressed by a favorable decision.  Lujan, 504 U.S. at 560-61; see also Allen v. Wright, 468 U.S. 737, 751 (1984).

Ripeness is also part of the "case or controversy" limitation of Article III.  "Ripeness is more than a mere procedural question; it is determinative of jurisdiction." Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).  The ripeness doctrine prevents premature adjudication.  It is aimed at cases that do not yet have a concrete impact upon the parties, in an analysis similar to the injury-in-fact inquiry under the standing doctrine. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985).  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).

Further, there is a prudential component to the ripeness inquiry.  The question of prudential ripeness requires the court to first consider the fitness of the issues for judicial review, and then to look at the hardship to the parties of withholding court consideration. Oklevueha Native American Church v. Holder, 676 F.3d 829, 835 (9th Cir. 2012).

Here, defendants assert, plaintiff has not established that he has suffered an injury in fact because he has not shown the invasion of a legally protected interest which is concrete and particularized, and which is actual and not conjectural or hypothetical, as explained by the Court in Lujan.  It is true that one type of injury that is redressable under the First Amendment is the denial of access to public records to the extent permitted by law. See Public Citizen v. United States Dept. of Justice, 491 U.S. 440, 448-49 (1989). However, defendants argue, in this case there has been no denial of access, and thus,

11

plaintiff cannot claim to have been injured. For similar reasons, defendants contend that plaintiff's claim is unripe, because no decision has been made by the court that has a concrete impact on plaintiff, and there is no issue that is yet fit for judicial review.

In opposition, plaintiff contends that because he gave the court "plenty of notice" (on July 24, 2012) that he intended to begin his "study" on September 4, 2012; and that because the court had not made a decision on his request by that date or provided him with any of the traffic citations, that action (or inaction) by the court constitutes a refusal to provide him with the records. Thus, he asserts, he has standing to proceed.

With regard to ripeness, plaintiff contends that his claims meet both constitutional and prudential ripeness requirements because the Superior Court has "undeniably" refused his request for access to court records, and because the issue of the court's suppression of his First Amendment rights is fit for judicial review. Plaintiff claims that in the context of First Amendment claims, the standing and ripeness requirements are more relaxed than in other contexts.

The court finds that the motion must be GRANTED. As an initial matter, the court notes that there is no cause of action for injunctive relief in federal court – an injunction is a remedy, not a cause of action. See Cox Commc'ns PCS, L.P. v. City of San Marcos, 204 F.Supp. 2d 1272, 1283 (S.D. Cal. 2002). Thus, there are only two causes of action at issue in the complaint.

With regard to subject matter jurisdiction, it is evident from the facts alleged that plaintiff's request has not been denied. Thus, his claims are not yet ripe, and he lacks Article III standing because he has not yet suffered any injury. In particular, his assertion that the court denied his request is belied by his complaint, where he quotes the August 29, 2012 voicemail from the Public Information Officer saying only that the records would not be available for review on his (self-selected) date of September 4, 2012, and the October 5, 2012 letter from Ms. Torre confirming that his request was "under review."

To the extent that the August 29, 2012 voicemail was ambiguous, the followup email on August 31, and the October 5 letter from Ms. Torre make it abundantly clear that the

court was still at that point evaluating and considering his request, in part because of privacy concerns regarding the personal information recorded on the citations. Without a clear response to plaintiff's request from the Superior Court, this court is unable to ascertain the basis for any denial (assuming the court denies the request) or for limiting access to a "reasonable" level (assuming that is the decision).

As for plaintiff's argument that ripeness and standing requirements are "relaxed" in First Amendment cases, the court notes that while that may be true in First Amendment "freedom-of-expression" cases, where a rush to the court is necessary to avoid a restriction on free speech, it is not true in First Amendment "access-to-information" cases. There is no reason in this case to relax standing and ripeness standards, as plaintiff does not allege that the Superior Court attempted to restrict anything he might have to say about traffic tickets issued in Contra Costa County – but only that the court is considering whether and under what circumstances bulk access to traffic tickets should be allowed. Any limitation on accessing traffic tickets would not, as a matter of law, "chill" his free expression rights.

Had plaintiff made a request for access to public records to which he is entitled under the law, and had the Superior Court denied that request, the claim would be ripe, certainly, and he might have standing to assert a First Amendment claim (assuming he could show an injury). In this case, however, the Superior Court advised plaintiff several times between July 24, 2012, when it received plaintiff's request, and October 5, 2012, when Ms. Torre wrote plaintiff to explain the court's concern with privacy issues, and to request additional information regarding the nature of plaintiff's project, that it was still evaluating the request.

The Superior Court is entitled to take the time it needs to make a reasoned determination with regard to approval or denial, including whether redaction of certain personal information contained in the paper citations is required or advisable. In addition, the Superior Court must consider how best to allocate scarce public resources to fulfill the request of one member of the public, possibly to the detriment of others. In filing this suit challenging the Superior Court's "delay" in responding to his request, plaintiff has acted

13

precipitously in placing before this court a dispute that is not sufficiently ripe for consideration.

As for plaintiff's argument that the Superior Court's "delay" in responding amounts to a denial of his request, the court is not persuaded. The alleged "delay" runs from September 4, 2012, the date plaintiff unilaterally selected as the date he would begin his review of the paper citations, to October 5, 2012, the date that Ms. Torre wrote plaintiff to request additional information.  Plaintiff's counsel wrote Ms. Torre on October 11, 2012, claiming that the court had failed to provide a viable explanation for its "refusal" to permit plaintiff to access the records, and then, on October 18, 2012, less than two weeks after Ms. Torre's October 5, 2012 letter, plaintiff filed the present action.  Given the irregular nature of plaintiff's request – to conduct a bulk review of tens of thousands of paper traffic citations that contain abundant personal details about the drivers involved – the court does not find any "delay" that was tantamount to a denial of the request.

Thus, because the court is dismissing the case for lack of ripeness and lack of standing, the dismissal is without prejudice to refile the claims if/when the Contra Costa Superior Court actually denies plaintiff's request.  At that point, however, assuming that plaintiff alleges the same claims as in the present action, the court would be inclined to stay the case pursuant to the Pullman abstention doctrine.

Under the Pullman doctrine, abstention may be appropriate where federal constitutional issues are raised in connection with state statutes whose interpretation is contested.  Under this rule, if a constitutional issue arises only if a state law is interpreted in a particular way, and the courts of that state have not yet construed it one way or another, federal courts may abstain, forcing the parties to litigate the matter in state court. Pullman, 312 U.S. at 500-01. Pullman abstention is not jurisdictional, but rather is ultimately a question of the exercise of jurisdiction. Smelt v. County of Orange, 447 F.3d 673, 679 (9th Cir. 2006).

Three factors must be present before a district court may abstain under the Pullman doctrine – (1) the complaint must involve a "sensitive area of social policy" that is best left

14

to the states to address; (2) "a definitive ruling on the state issues by a state court could obviate the need for [federal] constitutional adjudication by the federal court;" and (3) "the proper resolution of the potentially determinative state law issue is uncertain." Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928, 939-40 (9th Cir. 2002) (citations and quotations omitted).

In considering the arguments raised in connection with the present motion, the court was persuaded by defendants' arguments regarding abstention under the Pullman doctrine. In particular, the complaint involves "a sensitive area of social policy" in that plaintiff is in essence asking this court to pass judgment on the administrative operations of the California Superior Court, including the timing and process by which it considers requests for documents and provides access. Moreover, plaintiff has relied on California law as a foundation for his asserted right to access the hard copy traffic citations, and is now asking this court to review a question of state law that appears not to have been considered by the courts of this State. It appears likely that a definitive ruling on these issues by a state court would obviate the need for federal constitutional adjudication by this court. Nevertheless, because the court finds it lacks subject matter jurisdiction over plaintiff's claims, it does not decide the question of Pullman abstention.

With regard to whether plaintiff has stated a claim under the First Amendment or federal common law, the court notes that the public has historically had a right of access to court records generally, that the Superior Court has procedures in place whereby the public may request access to records, and that cited drivers plainly have historically had a right of access to their own traffic citations. What is not clear, however, is whether the hard copy traffic citations themselves and the personal identifying information they contain can be considered "court records" in the same way as the documents that the court relies on in adjudicating cases, to the extent that the general public has a right of access to all the information recorded in those citations. Again, however, because the court finds it lacks subject matter jurisdiction over plaintiff's complaint, it does not reach the question whether plaintiff has stated a constitutional or other claim.

15

Finally, with regard to defendants' request that the court decline to exercise supplemental jurisdiction over any state law claims, the court notes that there can be no supplemental jurisdiction without original jurisdiction. See, e.g., Herman Family Rev. Tr. v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001). This requirement must be distinguished from the district court's discretionary authority to retain jurisdiction over state-law claims where it has dismissed on the merits federal claims over which it did have original jurisdiction. Id. at 806.

When a district court has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors in 28 U.S.C. § 1367(c). Id. Here, however, because the court lacks subject matter jurisdiction over plaintiff's federal claims, the court has no power to adjudicate any claims in the lawsuit. See id. at 805.

B.  Motion for Preliminary Injunction

  1.  Legal Standard

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf v. Geren, 553 U.S. 674, 689-90 (2008). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter, 555 U.S. at 20. Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

### 2. Plaintiff's Motion

Plaintiff seeks an order enjoining defendants from "denying [him] public access to court case files for traffic infractions, i.e., to the Judicial Council of California TR-130, Traffic/Nontraffic Notices to Appear, for violations of California Vehicle Code sections 22349, 22350, 22356 . . . kept by the Superior Court of California for the County of Contra Costa."

Plaintiff asserts that he "does not seek or require any searching, review or selection of the Court Records or access to the Court's electronic database created from those Court Records, but rather seeks to review the batched paper Court Records one box or batch at a time, in the manner in which they are kept by the Court as backup records to the electronic database, and to return each box or batch he has reviewed in the same condition and order in which he received them before obtaining a second box or batch for review." He claims that this is the same process he has used in reviewing records of other Superior Courts in California.

Plaintiff argues that a preliminary injunction is warranted because he is likely to succeed on the merits of his claims, since the First Amendment to the U.S. Constitution and Art. 1, secs. 2 and 3 of the California Constitution, and state and federal common law, guarantee the public the right to inspect court records.

He also claims that the order he seeks is designed to preserve the status quo and to prevent the irreparable loss of rights prior to judgment. According to plaintiff, the status quo he is seeking to maintain is the historic right of the public to review and inspect court records. He contends that because he requested access to only the paper citations in the form in which they are stored and maintained by the court, no affirmative action is required to accomplish his constitutionally protected access rights. He asserts that his injunction is therefore prohibitory in nature, "as it seeks to restrain the [c]ourt from denying [him] his constitutionally protected access rights  and thereby preserve the status quo." He also argues that he has standing to sue, because he is "being deprived of immediate access to review the Court Records he has requested to review."

17

With regard to irreparable harm, plaintiff asserts that the harm to his right to inspect the court records, if this motion is denied, far outweighs the harm to defendants if the motion is granted. He claims that he will be harmed because the deprivation of First Amendment rights is per se irreparable harm. He asserts that defendants will not be harmed because they transcribe the information into a database and don't use the paper records, and it will therefore pose no problem for the court to simply turn over the boxes of citations to him for his research. He contends that defendants have identified no privacy rights at issue, in particular, no privacy rights they have any standing to protect.

Plaintiff also argues that he has no adequate remedy at law, given that the court's denial of access to court records is patently unconstitutional in the absence of strict compliance with the "compelling interest" test; and that the balance of equities favors his position.

Finally, he asserts that an injunction would be in the public interest because substantial public interest supports immediate access to the paper traffic citations. He claims that such access will ensure public confidence in the judiciary, and will promote more efficient administration of cases and more accurate fact finding, although he does not explain how those anticipated results will further his stated goal of exposing the biases of law enforcement.

The court finds that the motion must be DENIED. For the reasons stated above with regard to the motion to dismiss, plaintiff cannot show a likelihood that he will prevail on his claims, as his claims are not ripe and he has not suffered an injury and thus lacks standing. In addition, given that the claims are not ripe, the court finds that plaintiff cannot establish that he will suffer irreparable harm if the motion is denied.

Further, the court finds that plaintiff is not seeking to maintain the status quo by means of an injunction. The Contra Costa Superior Court has a procedure in place whereby members of the public can request court files for review, but there is no evidence that the court has in the past had a procedure whereby members of the public could review boxes of hard copy traffic citations, but now are not permitting it. Rather than seeking to

preserve the status quo, plaintiff is in fact seeking by this motion to achieve the ultimate object of the litigation – to compel the court to provide him with unlimited access to the paper copies of traffic citations.

**IT IS SO ORDERED.**

Dated: February 20, 2013

PHYLLIS J. HAMILTON
United States District Judge